# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHARLEY HUGHES, JR.,

    *Plaintiff,*

vs.

    Case No. 15-3158-EFM-DJW

MARIA BOS et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Charley Hughes, Jr., is an inmate in the custody of Kansas Department of Corrections ("KDOC"). He brings this action against Defendants Maria Bos, William Shipman, Keshia Lee, and Doug Burris under 42 U.S.C. § 1983 alleging that Defendants violated his First Amendment right to receive information. Specifically, Plaintiff challenges the application of certain prison regulations resulting in the censorship of sixteen publications and an item of mail sent to him. Defendants Bos and Shipman have moved for summary judgment on Plaintiff's claim (Doc. 31).[1] Because the Court concludes that they are entitled to qualified immunity, the Court grants Defendants' motion.

---

[1] Defendants Keshia Lee and Doug Burris have not been served with Plaintiff's First Amended Complaint.

# I. Factual and Procedural Background[2]

Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas. At the time of the matter at issue, he was incarcerated at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. Plaintiff is a member of the New Afrikan Black Panther Party.

Defendant Bos is the mailroom supervisor at EDCF. As part of her duties, she conducts a preliminary review of publications and determines whether they should be censored. She then notifies all correctional facilities of her decision and forwards the publication to Lansing Correctional Facility for further review. Defendant Lee is the Publications Review Administrative Assistant at Lansing Correctional Facility. She conducts an independent review of the publications and forwards her decision to Deputy Warden Shipman, who oversees the censorship review. Defendant Burris serves as the Secretary of Corrections' designee when inmates appeal the censorship of the publications.

While incarcerated at EDCF, Plaintiff had an unknown number of publication subscriptions. During 2015 and 2016, Plaintiff had a total of 16 publications censored and denied pursuant to K.A.R. 44-12-601 and I.M.P.P. 12-134 Uniform Review of Publication. The stated reason for the censorship was that the publications posed a threat to the safety and security of the institution. The censored publications include: "The San Francisco Bay View National Black Newspaper," "Turning the Tide," "The Burning Spear," "Change-Links Community Calendar & News," "MIM Theory, Psychology Imperialism Issue 9," "Instead of Prisons," "The CR Abolition Organizing Tool Kit by Shana Agid," "Abolition Now," and "Under Lock & Key."

---

[2] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

In addition, an item of mail sent to Plaintiff containing an article concerning the New Afrikan Black Panther Party was censored pursuant to K.A.R. 44-12-325.

Plaintiff appealed the censorship decisions, and his appeals were denied. Proceeding *pro se*, he then filed a Complaint in this Court against Defendants Bos and Shipman. On October 20, 2016, Plaintiff filed an Amended Complaint, adding Defendants Lee and Burris to the suit. Plaintiff asserts a claim under 42 U.S.C. § 1983 alleging that Defendants violated his First Amendment right to receive information. Defendants Bos and Shipman subsequently filed a Motion for Summary Judgment arguing that they are entitled to Eleventh Amendment immunity and qualified immunity. Plaintiff moved for the Court to appoint him counsel, and the Court granted his motion. Plaintiff then responded to Defendants' motion, which is now ripe for the Court's consideration.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[4] The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[5] If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] To survive summary judgment, the non-moving party's evidence must be admissible.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

### III. Analysis

**A. Eleventh Amendment Immunity**

The Eleventh Amendment generally prohibits suits in federal court seeking declaratory or injunctive relief or money damages against states or those people or organizations that are arms of the state.[10] "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."[11] As employees of the State of Kansas and KDOC during the time at issue, Defendants Bos and Shipman share the State's immunity for suits against them in their official capacities.[12]

---

[6] *Id.* (citing Fed. R. Civ. P. 56(e)).

[7] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231-32 (10th Cir. 1999) (asserting that, if applicable, the Eleventh Amendment bars suits against both states and "arms of the state").

[11] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).

[12] *See Jones v. Courtney*, 466 F. App'x 696, 698 (10th Cir. 2012).

It's not clear from Plaintiff's Amended Complaint whether he is bringing his suit against Defendants in their official capacity or individual capacity. However, in response to Plaintiff's motion, he asserts that he is bringing his claims against them in their individual capacity. Therefore, Defendants are not entitled to Eleventh Amendment immunity on Plaintiff's claim.

**B.     Qualified Immunity**

"Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[13] Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[14] When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to demonstrate that (1) the defendant's actions violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue.[15]

Because Defendants have raised the defense of qualified immunity, the burden shifts to Plaintiff to demonstrate that Defendants violated his First Amendment rights. Generally, inmates have a First Amendment right to receive information while in prison.[16] This right, however, is not without limitation.[17] Prison regulations may constitutionally impinge on this right so long as

---

[13] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[14] *Malley v. Briggs*, 475 U.S. 335, 335, 341 (1986).

[15] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

[16] *See Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004).

[17] *Id.*

they are "reasonably related to legitimate penological interests."[18] To determine whether a regulation is reasonably related to legitimate penological interests, the Court applies the deferential four factor test set forth in *Turner v. Safley*.[19] Under this test, the Court must consider (1) whether there is a rational connection between the prison policy and a legitimate governmental interest; (2) whether there are alternative means for inmates to exercise their constitutional rights; (3) the effect that accommodating the exercise of disputed rights would have on guards, other inmates, and prison resources; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the inmates' rights.[20] "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."[21]

In this case, Plaintiff challenges the censorship of the publications under two regulations: K.A.R. 44-12-601(d)(1)(A) and K.A.R. 44-12-325. The Court will analyze each of these regulations under the *Turner* test below.

   *1.     K.A.R. 44-12-601(d)(1)(A)*

K.A.R. 44-12-601(d) states that "[i]ncoming or outgoing mail, other than legal, official, or privileged mail may be censored only when there is reasonable belief in any of the following: (A) [t]here is a threat to institutional safety, order, or security."[22] Under the *Turner* analysis, the first factor requires a multifold analysis: "[the court] must determine whether the governmental

---

[18] *Turner v. Safely*, 482 U.S. 78, 89 (1987).

[19] *Id*. at 89-90. This four factor test applies irrespective of whether the plaintiff has brought a facial or an as applied challenge. *See, e.g., Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *Boles v. Neet*, 486 F.3d 1177, 1181 n.4 (10th Cir. 2007).

[20] *Turner*, 482 U.S. at 89-90.

[21] *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

[22] K.A.R. 44-12-601(d)(1)(A).

objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective."[23] This factor "is actually more of an element than a factor in the sense that it is not simply a consideration to be weighed but rather an essential requirement."[24]

According to Defendants, the underlying objective of K.A.R. 44-12-601(d)(1)(A) is institutional security. In *Thornburgh*, the Supreme Court analyzed a regulation that allowed prison officials to reject incoming publications found to be detrimental to institutional security.[25] When analyzing the regulation under the first *Turner* factor, the Supreme Court found that the governmental objective of prison security is legitimate "beyond question."[26] The Supreme Court then held that "[w]here, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are neutral."[27] Finally, the Supreme Court concluded that the regulation was rationally related to prison security.[28] The Court noted that "[w]here the regulations at issue concern the entry of materials into the prison, we agree . . . that a regulation which gives prison authorities broad discretion is appropriate."[29]

---

[23] *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989).

[24] *Boles*, 486 F.3d at 1181 (internal quotation marks and citation omitted).

[25] *Thornburgh*, 490 U.S. at 403.

[26] *Id*. at 415.

[27] *Id*. at 415-16.

[28] *Id*. at 416.

[29] *Id*.

The Tenth Circuit has applied this analysis to similar regulations protecting institutional security. In *Ind v. Wright*,[30] the plaintiffs, who were incarcerated at the Colorado State Penitentiary, challenged the constitutionality of DOC administrative regulation 300-26.[31] That regulation prohibits materials that an objective person could reasonably believe "encourage or endorse: violence or disorder; . . . hatred or contempt of other persons; [or] vengeance against other persons."[32] The regulation specifically identifies as excludable "[a]ny publication advocating hatred or contempt of other persons" and "[a]ny . . . material advocating or depicting association in a [security threat group] which is contrary to the interests of the facility."[33] In applying the first *Turner* factor, the Tenth Circuit adopted the Supreme Court's analysis in *Thornburgh* and concluded that the regulation was rationally related to legitimate penological objectives.[34]

The Court applies the same analysis as the Supreme Court in *Thornburgh* and the Tenth Circuit in *Ind* with regard to K.A.R. 44-12-601(d). Like the regulations at issue in those cases, K.A.R. 44-12-601(d)(1)(A) allows prison officials to censor material that could pose a threat to prison order or security. Therefore the regulation is rationally related to the legitimate penological interest of maintaining prison order and security.

Furthermore, the Court concludes that the regulation was reasonably applied in this case. Defendants have produced affidavits from Defendants which state that the publications at issue

---

[30] 52 F. App'x 434 (10th Cir. 2002).

[31] *Id*. at 436.

[32] *Id*.

[33] *Id*.

[34] *Id*. at 437-38.

depict gang violence, symbolism of security threat groups, race-based violence, violent and gory images, and articles that are inflammatory toward law enforcement officers. The subject matter of these publications could cause a reasonable prison official to believe that the publications may threaten prison security.

Plaintiff spends a good portion of his response detailing the history of the *Turner* test. However, he does argue that the first factor cannot be satisfied because the notice of censorship KDOC provided to Plaintiff did not specify how each publication posed or created a security threat. According to Plaintiff, without a specific explanation, the stated reason must be untrue and thus have nothing to do with legitimate security concerns.

Plaintiff's argument is not persuasive. Defendants have produced evidence showing that security and safety concerns were not simply pretext for the censorship of the publications. For example, Defendant Lee prepared an affidavit in support of the *Martinez* Report which states that she censored the articles in the April 1, 2015 issue of the *San Francisco Bay View* because they were racially charged, included victims of violent acts with bloodied faces, and were inflammatory toward law enforcement officers. She also stated that other issues of the *San Franciso Bay View* were allowed in the prison because their content did not pose a security threat. Plaintiff similarly testified in his affidavit in response to Defendants' motion that he received other issues of the *San Francisco Bay View* and issues of other publications that were censored. While Plaintiff believes this is evidence that the publications were arbitrarily censored, it shows just the opposite. The fact that some issues of a publication were allowed into the facility while others were not shows that Defendants did not ban the entire publication itself. Rather, Defendants distinguished those issues that touched upon violence, racial tension, or defiance of authority, which relate to the safety and security of the prison.

In the First Amendment context, the Court must "accord substantial deference to the professional judgment of prison administrators."[35] Indeed, the Supreme Court has stated that it is inappropriate for courts to " 'substitute our judgment on . . . difficult and sensitive matters of institutional administration' . . . for the determinations of those charged with the formidable task of running a prison."[36] Defendants have produced evidence showing that the regulations were reasonably applied and that they serve legitimate governmental interests. Accordingly, the first *Turner* factor favors Defendants.

Plaintiff does not address the second, third, or fourth *Turner* factors and thus has not met his burden to show a genuine issue of fact on these elements. Regarding the second *Turner* factor—"whether there are alternative means of exercising the right that remain open to prison inmates"—Defendants have shown that Plaintiff has alternative means of exercising his First Amendment right because he has access to other publications, including other issues of the censored publications that do not contain provocative and inflammatory content.[37]

The third *Turner* factor relates to the impact of providing Plaintiff the accommodation he seeks.[38] Here, Plaintiff requests Defendants provide him the censored publications. This is not an appropriate accommodation given their nature and content. As the Tenth Circuit has noted, allowing materials into the prison "that espouse hatred or contempt of others would negatively impact other prisoners, guards who must prevent any resulting animosity, and prison resources

---

[35] *Overton*, 539 U.S. at 132.

[36] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987) (quoting *Block v. Rutherford*, 468 U.S. 576, 588 (1984)).

[37] *See Thornburgh*, 490 U.S. at 418 (finding that the second factor was "clearly satisfied" where the prisoner had a broad range of publications to send, receive, or read).

[38] *Id*.

aimed at preventing violence."[39] The Tenth Circuit also noted that "[i]n light of the extreme racial tensions and violence prevalent in prisons, such provocative materials are likely to increase the stress on prisoners, guards, and resources alike."[40] Defendants have shown that materials that incite violence, contain imagery that relates to security threat groups, and encourage defiance of authority would negatively impact prisoners, prison guards, and prison resources. Thus, the third *Turner* factor favors Defendants.

Finally, there is no evidence as to the fourth *Turner* factor—an obvious, easy alternative that fully accommodates Plaintiff's rights at a *de minimis* cost to the prison.[41] "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."[42] If an inmate can point to an alternative that fully accommodates his rights at a *de minimis* cost to valid penological interests, this is evidence that the regulation does not meet the reasonable relationship standard.[43]

Plaintiff has not produced any alternative that fully accommodates his right. In fact, he has not supplied any alternative at all. This failure to suggest any alternatives is evidence of the reasonableness of the regulation. Accordingly, the fourth *Turner* factor is satisfied.

Based on the Court's analysis, K.A.R. 44-12-601(d)(1)(A) is rationally related to a legitimate penological interest, and it was reasonably applied in Plaintiff's case. Plaintiff has not

---

[39] *Ind*, 52 F. App'x at 438.

[40] *Id*.

[41] *Turner*, 482 U.S. at 90-91.

[42] *Id*.

[43] *Id*.

shown that Defendants violated his First Amendment rights by censoring the publications under K.A.R. 44-12-601(d). Therefore, Defendants are entitled to qualified immunity on Plaintiff's claim.

*2. K.A.R. 44-12-325*

Plaintiff also challenges Defendant's censorship of a mail item sent to him regarding the New Afrikan Black Panther Party and titled "A Classified Directive to Party Members." Defendants censored the item because it contains or relates to security threat group material as described in K.A.R. 44-12-325. That regulation defines a "security threat group" as "any ongoing formal or informal organization, association, or group of three or more persons with a common name or identifying sign or symbol, but without specific approval by the warden."[44] The regulation further states that inmates "shall not possess any item, whether in its original condition or in an altered state, associated or identified with any security threat group."[45]

K.A.R. 44-12-325 burdens Plaintiff's free speech and free exercise rights because it has been applied to deny him a publication concerning the New Afrikan Black Panther Party. However, an application of the four *Turner* factors shows that the regulation is rationally related to a legitimate penological interest. With regard to the first factor, the regulation's underlying objective is prison security, which is a legitimate and neutral governmental interest.[46] Furthermore, the regulation is rationally related to this interest. As discussed above, the Tenth

---

[44] K.A.R. 44-12-325(c).

[45] *Id.*

[46] *See Thornburgh*, 490 U.S. at 415-16; *Ind.*, 52 F. App'x at 438.

Circuit has found a similar regulation governing security threat group related material rationally related to prison security.[47]

Plaintiff argues that the regulation violates his First Amendment rights because it is arbitrary and irrational. Plaintiff claims that the regulation is not "logically connected to KDOC's asserted goal of safety and security" because Defendants do not inform inmates which groups are security threat groups so that inmates can get approval from the warden to communicate with that group. Plaintiff does not cite any persuasive or binding authority in support of his argument. Furthermore, this argument ignores the deferential nature of factor one's inquiry, especially when a regulation implicates prison security.[48] Materials that relate to gangs or security threat groups pose a threat to the safety and security of prison inmates and staff. Thus, K.A.R. 44-12-325 is reasonably related to the legitimate government interest of keeping out materials that could incite security threat group violence in the institution.

The Court also concludes that K.A.R. 44-12-325 was reasonably applied in this case. The censored mail item describes the formation and theories behind the New Afrikan Black Panther Party. This group is a known security threat group. While Plaintiff attempts to show that this party only relates to political or sociological ideologies, the evidence does not support this assertion. Indeed, Plaintiff's own evidence states that the party actively recruits former white supremacists. In addition, Defendant Burris has testified that the New Afrikan Black

---

[47] *See Thornburgh*, 490 U.S. at 415-17 (concluding that regulations allowing prison authorities discretion to determine that particular reading material creates an intolerable risk of disorder was rationally related to the legitimate interest of maintaining prison security); *Ind.*, 52 F. App'x at 438 (concluding that an administrative regulation prohibiting material advocating or depicting association or membership in a security threat group was rationally related to prison security); *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1189 (N.D. Okla. 2010) (upholding the constitutional validity of a regulation that prohibits publications that advocate terrorism, criminal behavior, racial, religious, or national hatred).

[48] *See Thornburgh*, 490 U.S. at 416 ("Where the regulations at issue concern the entry of materials into the prison . . . a regulation which gives prison authorities broad discretion is appropriate.").

Panther Party is a "separatist group that is considered a threat group in correctional facilities" and is recognized as "an extremist hate group by the Southern Poverty Law Center." The Seventh Circuit has also discussed how the New Afrikan Black Panther Party "claims descent from the original Black Panthers and like its predecessor both advocates and practices violence."[49] Here, Defendants reasonably determined that the mail item sent Plaintiff contained material related to an security threat group that creates an unsafe prison environment. The first *Turner* factor is satisfied.

Looking at the remaining *Turner* factors, the Court again notes that Plaintiff has not provided any evidence with regard to factors two, three, and four. The Court applies the same analysis as it did for K.A.R. 44-12-601(d) and concludes that these factors have been satisfied. Therefore, K.A.R. 44-12-325 is valid because it is rationally related to a legitimate penological interest. It was also reasonably applied in this case. Therefore, Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim related to censorship of certain mail items under K.A.R. 44-12-325.

  3. *Due Process*

In his argument regarding the censored material relating to a security threat group, Plaintiff claims that K.A.R. 44-12-325 is arbitrary and "clearly a violation of [P]laintiff's due process rights to notice and also a violation of First Amendment Rights." Plaintiff's First Amended Complaint only alleges a violation of the First Amendment. To the extent Plaintiff seeks to add a due process claim through his response, the Court declines to consider it.

---

[49] *Toston v. Thurmer*, 689 F.3d 828, 830 (7th Cir. 2012).

Under Fed. R. Civ. P. 15(a)(1)(A)-(B), a party may freely amend the complaint within "21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion . . . whichever is earlier." At all other times, the party must seek leave of the court to amend its pleading.[50] The Tenth Circuit has interpreted new allegations in response to a motion for summary judgment as a potential request to amend the complaint.[51] However, the plaintiff is still required to provide a formal amended complaint.[52] Here, Plaintiff has not sought to amend his complaint, asked that his response to Defendants' motion for summary judgment be treated as a request to amend, or filed a second amended complaint. All Plaintiff has done is blindly assert that K.A.R. 44-12-325 violates his due process rights. Thus, the Court is not required to consider his new claim.

Furthermore, amendment would be futile in this case. The Court assumes that Plaintiff is asserting a violation of procedural due process rights because his response claims a violation of his "due process rights to notice." When a prison withholds delivery of, or censors inmate mail, it must provide minimum procedural safeguards.[53] These safeguards include: (1) the inmate must be notified of the rejection; (2) the inmate must have a reasonable opportunity to protest the

---

[50] Fed. R. Civ. P. 15(a)(2).

[51] *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

[52] *See id*. at 1212 (noting that when an amendment by summary judgment response is permitted, "the federal rules contemplate a formal amended complaint [and] amended answer"); *see also Fuqua v. Lindsey Mgmt. Co., Inc.*, 321 F. App'x, 732, 735 (10th Cir. 2009) (upholding a district court's decision not to allow a plaintiff to amend a complaint through a response to a motion for summary judgment because the plaintiff did not ask that its response be treated as a request to amend and never filed a formal amended complaint).

[53] *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401; *see also Jacklovich*, 392 F.3d at 433.

decision; and (3) the protest or appeal must be reviewed by a prison official not involved in the censorship decision.[54]

Here, the evidence shows that the procedural safeguards have been met. Defendant was notified by KDOC staff regarding the censorship decisions in each case. The notices specified which regulation the publications were being censored under and gave the reason for the censorship. Plaintiff was provided the opportunity to appeal the censorship decisions, and his appeals were reviewed by officials not involved in the original censorship decisions. When an inmate is given verbal or written notice of a rejection and the inmate had the opportunity to grieve that censorship and appeal the decision to prison officials not involved in the decision, the inmate has been "afforded all of the procedural due process that is constitutionally required."[55] Plaintiff has not come forward with any evidence that the notice of censorship in this case with regard to the mail censored under K.A.R. 44-12-325 was deficient, especially when he was able to appeal the decision through the appeals process. Accordingly, the Court will not allow Plaintiff to amend his Amended Complaint to add a due process claim because such claim would be futile.

### IV. Conclusion

Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim. The regulations under which the publications and mail were censored, K.A.R. 44-12-601 and K.A.R. 44-12-325, are constitutionally valid because they are reasonably related to a legitimate penological interest. Furthermore, they were reasonably applied in this case. To the extent Plaintiff is alleging a procedural due process claim in his response to Defendants' motion, the

---

[54] *Jacklovich*, 392 F.3d at 433 (quoting *Procunier*, 416 U.S. at 418).

[55] *Strope v. Collins*, 492 F. Supp. 2d 1289, 1298 (D. Kan. 2007).

Court declines to consider it. Accordingly, the Court grants summary judgment in favor of Defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 11th day of September, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE